FILED
2022 May-31  AM 10:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**GABRIEL BYRDSONG, *et al.*,**
        Plaintiffs,

**v.**

**A&E TELEVISION NETWORKS, LLC, *et al.*,**
        Defendants.

**Case No. 4:21-cv-607-CLM**

## MEMORANDUM OPINION

The Plaintiffs are inmates at Etowah County Detention Center who were depicted in the sixth season of the reality television show "60 Days In." They have sued A&E Television Networks LLC ("A&E") and Broadleaf Productions LLC ("Broadleaf") (collectively, "the Defendants"). (Doc. 39). The Defendants ask the court to dismiss the Plaintiffs' Second Amended Complaint. (Doc. 45).

For the reasons stated within, the court will **GRANT** the Defendants' motion to dismiss the Second Amended Complaint. The court will **DISMISS** the case with prejudice.

## BACKGROUND

In June 2019, the Defendants filmed the sixth season of an undercover reality television show called "60 Days In" in the Etowah County Detention Center. To produce the show, the Defendants placed undercover actors inside the jail who posed as inmates. The actors obtained personal information from the inmates and had personal interactions with the inmates. The Defendants included the information and interactions in the reality television series. Only some Plaintiffs who were depicted in the show signed release forms. Of those who signed the release forms, the parties disagree about whether the Defendants legally obtained the forms.

A&E aired the sixth season from January 2020 to April 2020. Defendants paid no inmate for appearing in the show.

## STANDARD OF REVIEW

On Rule 12 motions to dismiss, the court accepts the allegations in the Plaintiffs' Second Amended Complaint as true and construes them in the light most favorable to the Plaintiffs. *Lanfear v. Home Depot, Inc.*, 697 F.3d 1267, 1275 (11th Cir. 2012). The court need not accept legal conclusions or unwarranted factual inferences as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The ultimate question is whether all the Plaintiffs' allegations, when accepted as true, "plausibly give rise to an entitlement of relief." *Id.* at 678–79. If the facts as pleaded could entitle the Plaintiffs to relief, then the court must deny the Defendants' motion to dismiss. If the court accepts all the Plaintiffs' pleaded facts as true, and the Plaintiffs still would not be entitled to relief, then the court must grant the motion.

## ANALYSIS

In the Second Amended Complaint, the Plaintiffs present three counts: (Count I) Defamation; (Count II) Unjust Enrichment; and (Count III) Fraudulent Suppression.[1] (Doc. 39). The Plaintiffs also included sections titled "Rule 23 – Class Action Notice" (*id.* ¶¶ 27–28) and "Class Representatives Noticed and Class Member Notice Reservation" (*id.* pp. 24–25), asking the court to certify the action as a class action.

First, the court will address the merits of the Plaintiffs' claims. Then the court will address the Plaintiffs' request for the court to certify the action as a class action.

---

[1] After the parties filed their briefs related to the motion to dismiss, the parties filed a joint stipulation of dismissal, dismissing the claims of five of the Plaintiffs: Jessica McCurdy, David Jones, Gary Christian, Chauncey Kynard, and Mark Battles. (Doc. 54). The court will not address the dismissed Plaintiffs' claims.

## I. The Merits of the Claims

Though the Plaintiffs' Second Amended Complaint still has some deficiencies—*i.e.*, it contains "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"—the court finds that it provides the Defendants with "adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1321, 1323 (11th Cir. 2015). So the court will address the merits of the Plaintiffs' claims.

### <u>Count I: Defamation</u>

Count I is a state-law claim of defamation. (Doc. 39, ¶¶ 43–59). Under Alabama law, the "elements of cause of action for defamation are: (1) a false *and* defamatory statement concerning the plaintiff; (2) an unprivileged communication of that statement to a third party; (3) fault amounting at least to negligence on the part of the defendant," and (4) damages. *McCaig v. Talladega Publ'g Co.*, 544 So.2d 875, 877 (Ala. 1989) (citing Restatement (2d) of Torts § 558 (1977) (emphasis in original)).

In its previous opinion, the court instructed the Plaintiffs to identify the elements of the claim, then plead specific facts to support the elements. (Doc. 34 at 7-8). The Plaintiffs failed to do so—as highlighted by the fact that the Plaintiffs again failed to allege any statements that the Defendants made about them. In fact, many paragraphs within Count I are unrelated to defamation. Those that are defamation related only contain conclusory or vague statements:

- "Thus, Defendants defamed Plaintiff after having met with the clients of attorneys without permission." (Doc. 39 ¶ 53).

- "The infringements show the intentions of A&E to profit off the defaming light it created . . . ." (Doc. 39 ¶ 54).

- "The Defendant's actions were so egregious that the damages are hard to even compensate with an amount

large enough since every employer, every potential new
friend, every co-worker, every neighbor and anyone else
who Plaintiffs come in contact with will perpetually have
access to one of the most defaming depictions possible."
(Doc. 39 ¶ 58).

In short, the Plaintiffs only provided vague, conclusory statements,
not facts that would prove a defamation claim. They did so after the court
walked them through how to plead a viable claim. (Doc. 34 at 7-8). So the
court will dismiss this claim with prejudice.

## Count II: Unjust Enrichment

In Count II, the Plaintiffs claim that the Defendants were unjustly
enriched at their expense. (Doc. 39 ¶¶ 60–78). "To prevail on a claim of
unjust enrichment, a plaintiff must show: (1) the defendant knowingly
accepted and retained a benefit, (2) provided by another, (3) who has a
reasonable expectation of compensation." *Matador Holdings, Inc. v. HoPo
Realty Inv., LLC*, 77 So. 3d 139, 145 (Ala. 2011). Though the Plaintiffs
may think they should get profits from the show, they do not plead any
facts to show that they had a reasonable expectation of compensation as
required to plead an unjust enrichment claim. *See Leigh King Norton &
Underwood, LLC v. Regions Fin. Corp.*, 497 F. Supp. 3d 1098, 1113 (N.D.
Ala. 2020) (granting the motion to dismiss when the defendant's action
"foreclose[d] any argument that [plaintiff] could have reasonably expected
compensation for its work as an agent"). In fact, the Plaintiffs admit that
"no profit-sharing or like proposal was made to [them]." (Doc. 39 ¶ 62).
Because the Plaintiffs do not plead facts that would prove they had a
reasonable expectation of payment for appearing on the show, the court
will dismiss Count II with prejudice.

## Count III: Fraudulent Suppression

In Count III, the Plaintiffs claim that the Defendants engaged in
fraudulent suppression when they obtained releases from some Plaintiffs
by presenting the show as a documentary but withheld that A&E was the

associated broadcasting company. (Doc. 39 ¶¶ 79–98). To state a claim for fraudulent suppression, the Plaintiffs must plead: "(1) that [the Defendants] had a duty to disclose the existing material fact; (2) that [the Defendants] suppressed this material fact; (3) that [Defendant's] suppression of this fact induced [the Plaintiffs] to act or to refrain from acting; and (4) that [the Plaintiffs] suffered actual damage as a proximate result." *Abner v. U.S. Pipe & Foundry Co.*, 2017 WL 6945347, at *2 (N.D. Ala. Mar. 31, 2017).

The Plaintiffs argue that they were "not aware that their 'appearances' would be used for a 'reality show' that was 'for profit'." (Doc. 51, p. 9). Of course, this claim cannot apply to the Plaintiffs that did not sign a release form because Defendants could not have fraudulently suppressed material facts to get them to sign the release and participate in the show. So the Plaintiffs at issue for this claim are those who signed a release. But the Plaintiffs admit that the releases explained that 60 Days In was an "entertainment purposed show and was done for profit and with revenue expectations." (Doc. 51, p. 5). The relevant parts of the release state:

> I am voluntarily appearing in the Program and I understand that . . . I may reveal and/or relate, and other parties may reveal and/or relate information about me of a personal, private, surprising, defamatory, disparaging and/or embarrassing nature that may be used in whole or in part for *entertainment purposes*.
>
> . . .
>
> [T]he Producer may use and license others to use my name, voice, likeness, image, and any biographical material concerning me which I may provide in any and all media . . . throughout the world in all media . . . ."

(Doc. 45-12) (emphasis added).

Under Alabama law, a "person who signs a contract is on notice of the terms therein and is bound thereby even if he or she fails to read the document." *Locklear Dodge City, Inc. v. Kimbrell*, 703 So. 2d 303, 306 (Ala. 1997). So the Plaintiffs who signed releases were, or should have been, aware that the show was for "entertainment purposes" and could be presented in "all media." *See Streit v. Twentieth Century Fox Film Corp.*, 2008 WL 11422482, at *1 (N.D. Ala. Jan. 30, 2008) (finding no fraudulent inducement when, "had the plaintiffs read the Standard Consent Agreement, it would have been apparent from the clear and unambiguous language . . . that all claims must be brought in . . . New York"); *Weil v. Johnson*, 2002 WL 31972157, at *2 (N.Y. Sup. Ct. N.Y. Cty. Sept. 27, 2002) ("It is well established that a plaintiff may not avoid his obligations under a clearly worded release on the ground that the defendant falsely misrepresented the true significance of the document to him in order to secure his signature.").

None of the remaining Plaintiffs pleaded that he lacked capacity to read, comprehend, and contractually bind himself. Because the terms of the release unambiguously state that the show is for entertainment purposes and covers all media outlets, the Plaintiffs fail to state a claim for fraudulent suppression. The court will dismiss this claim with prejudice.

## II. The Class Action Notice

As explained above, the Plaintiffs have pleaded no viable claims. So if the Plaintiffs meant for the section of their complaint titled "Class Representatives Noticed and Class Member Notice Reservation" to be construed as a motion to certify this case as a class action, the court will deny this motion as moot.

## CONCLUSION

For the reasons stated above, the court will **GRANT** the Defendants' motion to dismiss the Plaintiffs' Second Amended Complaint. (Doc. 45). Because the court previously gave the Plaintiffs the chance to

cure their pleading deficiencies (doc. 34), the court will **DISMISS** the Plaintiffs' claims **WITH PREJUDICE**.

The court will enter a separate order that carries out this ruling.

**DONE** on May 31, 2022.

_____

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE